IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CAROL C. SUSSEL, | ) | Civ. No. 05-00444 ACK/KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL WYNNE, Secretary of the Air Force, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER REGARDING MOTIONS IN LIMINE AND OBJECTIONS TO EXHIBITS

### BACKGROUND

Carol C. Sussel ("Plaintiff") brings this action against Secretary of the Air Force Michael Wynne ("Defendant") for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. The gravamen of Plaintiff's complaint is that she was subjected to unlawful discrimination by her superiors at Hickam Air Force Base because of her race (Asian/Pacific Islander), national origin (Chinese-Japanese), and color (brown). Plaintiff alleges that as a result of the discrimination and in retaliation for complaining about that discrimination, she was detailed (from her position as chief of Outdoor Recreation) to the Teen Center and then subsequently terminated from employment.

The Court previously granted in part and denied in part Defendant's motion for summary judgment, leaving four claims to be determined by the jury at trial: whether (1) Plaintiff was subjected to disparate treatment on the basis of race, color, and national origin when she was detailed to the Teen Center, (2) Plaintiff was subjected to disparate treatment on the basis of race, color, and national origin when she was terminated from employment, (3) Plaintiff was terminated in retaliation for protected activity, and (4) the alleged decision to alter her detail to the Teen Center was made in retaliation for protected activity. See Order Granting in Part and Denying in Part Defendant's Motion for Partial Dismissal and Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (Sept. 12, 2006) ("Summary Judgment Order").

On September 26, 2006, Plaintiff filed six motions in limine. On that same date, Defendant filed five motions in limine. On October 3, each party filed oppositions to the other party's motions in limine. On October 3 and 10, 2006, Plaintiff filed supplements to her motions in limine. On October 3, 2006, Defendant filed objections to Plaintiff's exhibits. On October 12, 2006, the Court held a pretrial conference and hearing on the motions in limine and objections to exhibits.

**DISCUSSION**

I.   **Plaintiff's Motion in Limine to Admit Evidence of Discriminatory Conduct by Lt. Col. Hollwood Against Other Non-Caucasian Agency Employees**

Plaintiff filed a Motion in Limine to Admit Evidence of Discriminatory Conduct by Lt. Col. Hollwood Against Other Non-Caucasian Agency Employees, in which Plaintiff moves to admit evidence of discriminatory conduct by Hollwood against five Asian/Pacific Islander employees: Howard Pittman, Tamafaiga Tuiteleleapaga ("Tui"), Leonard Noblado, Zachary Gernler, and Estrellita Maglangit.  <u>See</u> Memorandum of Law in Support of Motion in Limine to Admit Evidence of Discriminatory Conduct by Lt. Col. Hollwood Against Other Non-Caucasian Agency Employees at 1-2 ("Plaintiff's Motion re: Hollwood's Other Conduct").  Defendant filed an opposition, arguing that this evidence should be excluded under Federal Rules of Evidence ("Rules") 401, 402, 403, and 404(b).[1]

The Court finds that evidence of Hollwood's allegedly discriminatory conduct against other Asian/Pacific Islander employees is admissible to prove Hollwood's motive and intent, under Rules 401, 402, 403, and 404(b).

First, the evidence is relevant under Rule 401 because "evidence of [an] employer's discriminatory attitude <u>in general</u>

_____

[1]Admission of the Cox Report is addressed in a separate section of this order.

3

is relevant and admissible to prove race discrimination." <u>Heyne</u> <u>v. Caruso</u>, 69 F.3d 1475, 1480 (9th Cir. 1995) (citing <u>United</u> <u>States Postal Serv. Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716 (1983)) (emphasis in original); <u>see also</u> <u>Spulak v. K Mart Corp.</u>, 894 F.2d 1150, 1156 (10th cir. 1990) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent."). More specifically, "[a]n employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." <u>Heyne</u>, 69 F.3d at 1479 (holding that plaintiff should have been permitted to introduce evidence of employer's sexual harassment of other employees in order to rebut employer's proffered reason for terminating employee); <u>see also</u> <u>Beachy v. Boise Cascade Corp.</u>, 191 F.3d 1010, 1014 (9th Cir. 1999) (finding that prior incidents of intolerance by employer against other persons in plaintiff's well-defined and protected group - such as persons of a particular race - could be probative of general hostility toward that group even if such incidents did not rise to the level of a statutory violation).

Second, under Rule 404(b), the evidence is admissible to prove Hollywood's motive or intent in detailing Plaintiff to the Teen Center. <u>See</u> <u>Heyne</u>, 69 F.3d at 1480 (in Title VII sexual

4

harassment case, "[e]vidence of [employer's] sexual harassment of other female workers may be used, however, to prove his motive or intent in discharging [plaintiff]"). The Court notes that evidence of Hollywood's allegedly discriminatory conduct against other employees is not admissible to prove action in conformity therewith. See Rule 404(b); Heyne, 69 F.3d at 1480.

Third, under Rule 403, the probative value of Hollywood's allegedly discriminatory conduct against other Asian/Pacific Islanders is especially high because of the inherent difficulty in proving state of mind. See Heyne, 69 F.3d at 1480 (quoting Mullen V. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 113 (4th Cir. 1988)). The Court finds that the probative value of the evidence substantially outweighs any danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. See Rule 403. To limit any potential for prejudice, the Court will permit a limiting jury instruction to the effect that the evidence of Hollywood's discriminatory acts against other individuals is to be considered only for the determination of Hollywood's motive and intent. See Heyne, 69 F.3d at 1481. The Court orders the parties to submit a proposed limiting jury instruction on this subject.

With respect to Pittman, Plaintiff expects to present evidence regarding Hollywood's interactions with Pittman leading

up to and including the fact that Hollywood cancelled the hiring of Pittman for the GS-7 Lead Lifeguard position after Plaintiff had selected Pittman for that position.  <u>See</u> Plaintiff's Motion re: Hollywood's Other Conduct at 6-7.  Plaintiff expects to use this evidence to demonstrate that Hollywood discriminated against Pittman because of his Asian/Pacific Islander race, and that such evidence of discrimination against Pittman demonstrates Hollywood's discriminatory intent in taking employment action against Plaintiff.  For the reasons discussed above, this evidence is admissible to prove intent and motive.  The Court finds the evidence highly probative despite the fact that the employment actions allegedly taken against Pittman and Plaintiff are dissimilar.  <u>See</u> Defendant's Motion in Limine to Exclude Testimony Regarding Non-Selection of Howard Pittman at 4 (Sept. 26, 2006) (arguing that the evidence regarding Pittman should not be admitted because the specific employment actions of which Pittman and Plaintiff complain are not similar).  Courts have found that prior acts of discrimination against members of plaintiff's racial class are relevant and probative even where the discriminatory actions themselves are dissimilar.  <u>See, e.g.</u>, <u>Estes v. Dick Smith Ford, Inc.</u>, 856 F.2d 1097, 1104 (8th Cir. 1988) (finding that evidence of employer's prior discriminatory acts against black customers is probative of employer's allegedly discriminatory motive in discharging plaintiff from employment),

6

abrogated on other grounds by Price Waterhouse v. Hopkins, 490
U.S. 228 (19889); see also Heyne, 69 F.3d at 1480 (citing Estes
favorably).  Likewise, the Court finds that evidence that
Hollywood posed a racially charged question to Pittman -
regarding how many "haoles" were on staff at Outdoor Recreation -
is probative of Hollywood's motive and intent in taking
employment actions against both Pittman and Plaintiff, because
the question (whether it included a racial slang term or not)
could demonstrate that Hollywood was concerned by a high ratio of
Asian/Pacific Islanders to Caucasians on her staff.

        With respect to Tui, Plaintiff expects to present
evidence that Tui applied for a vacant GS-10 Program Director
position, Plaintiff recommended Tui for the job and/or indicated
her intent to select him for the job, and Hollywood selected a
Caucasian person for the job instead.  See Plaintiff's Motion re:
Hollywood's Other Conduct at 8.  Additionally, Tui is expected to
testify that other Caucasians were detailed into supervisory
positions despite their lack of qualifications and that Hollywood
did not respond to Tui's questioning of how such appointments
could be made despite the lack of qualifications.  Id.  Plaintiff
expects to use this evidence to demonstrate that Hollywood
discriminated against Tui because of his Asian/Pacific Islander
race, and that such evidence of discrimination against Tui
demonstrates Hollywood's discriminatory intent in taking

7

employment action against Plaintiff.  For the reasons discussed
above, this evidence is admissible to prove intent and motive.
The Court is not persuaded otherwise by Defendant's argument that
the evidence should be precluded because Plaintiff allegedly did
not officially select Tui (she allegedly only recommended him) or
Defendant's argument that Tui was allegedly found by the Air
Force Personnel Center to be unqualified for the position.  <u>See</u>
Defendant's Motion in Limine to Exclude Testimony Regarding Non-
Selection of Tamafaiga Tuiteleleapaga or Recommendation of Eddy
Mentzer at 3-4 (Sept. 26, 2006).  The Court finds that
Plaintiff's proposed evidence is highly probative and should be
admitted despite such counter evidence, as such counter evidence
may go to the weight that the jury may ascribe to Plaintiff's
evidence.  <u>See, e.g.</u>, <u>Beachy</u>, 191 F.3d at 1014 (noting that
evidence of employer's prior incidents of intolerance of a
particular race can be probative of employer's general hostility
even if the incidents do not rise to the level of a statutory
violation).

    With respect to Noblado, Plaintiff expects to present
evidence that Noblado witnessed Hollywood threaten Asian/Pacific
lifeguards (including Noblado, Tui, and Gernler) with termination
if they did not pass a fitness test being instituted by
Hollywood.  <u>See</u> Plaintiff's Motion re: Hollywood's Other Conduct
at 8-9.  Plaintiff contends that the fitness test was instituted

8

by Hollywood as a way to get rid of Asian/Pacific Islander lifeguards.  Plaintiff expects to use this evidence to demonstrate that Hollywood discriminated against Noblado and others because of their Asian/Pacific Islander race, and that such evidence of discrimination demonstrates Hollywood's discriminatory intent in taking employment action against Plaintiff.[2/]  As discussed above, this evidence that Hollywood discriminated against other Asian/Pacific Islanders is highly relevant and admissible to prove intent and motive.

With respect to Gernler and Maglangit, Plaintiff expects them to testify that Hollywood referred to the Asian/Pacific Islander lifeguards (Pittman, Tui, Noblado, and Gernler) specifically regarding implementing the fitness test. See Plaintiff's Motion re: Hollywood's Other Conduct at 9. Plaintiff expects to use this evidence to demonstrate that Hollywood discriminated against these employees and others because of their Asian/Pacific Islander race, and that such evidence of discrimination demonstrates Hollywood's discriminatory intent in taking employment action against

---

[2/]Additionally, Plaintiff expects Noblado to testify that Hollywood commented about his age and whether he would be retiring soon.  See Plaintiff's Motion re: Hollywood's Other Conduct at 9.  At this time, it is not clear to the Court how Hollywood's alleged comment about Noblado's age would demonstrate racially discriminatory intent, however, the Court will permit Plaintiff to proffer that evidence at trial if Plaintiff believes that it is relevant.  Defendant may raise an objection if he believes Plaintiff has not demonstrated its relevance.

Plaintiff.  For the reasons discussed above, this evidence is admissible to prove intent and motive.[3]

Accordingly, the Court grants Plaintiff's Motion re: Hollywood's Other Conduct, finding that evidence of Hollywood's allegedly discriminatory conduct against other Asian/Pacific Islander employees is admissible to prove Hollywood's motive and intent in taking adverse action against Plaintiff.

## II. Plaintiff's Motion in Limine to Admit Commander Directed Report of Investigation Prepared By Lt. Col. Kimberly Cox into Evidence

Plaintiff filed a Motion in Limine to Admit Commander Directed Report of Investigation Prepared by Lt. Col. Kimberly Cox into Evidence, seeking to admit the Commander Directed Report of Investigation Prepared by Lt. Col. Kimberly Cox dated June 10, 2004 (the "Cox Report").  See Memorandum of Law in Support of Motion in Limine to Admit Commander Directed Report of Investigation Prepared by Lt. Col. Kimberly Cox into Evidence at

_____

[3]Plaintiff also expects to present evidence that after Hollywood installed Julie Klembara as the Outdoor Recreation ("ODR") chief, Klembara monitored Maglangit's work, and Hollywood stated that Hollywood was glad once Maglangit retired.  See Plaintiff's Motion re: Hollywood's Other Conduct at 9.  For the same reasons discussed with respect to Maglangit's other testimony, this evidence may be relevant if Plaintiff is attempting to establish that Hollywood discriminated against Maglangit on the basis of Maglangit's Asian/Pacific Islander race.  Additionally, the Court notes that Klembara did not supervise Plaintiff; however, Klembara's actions could be relevant to demonstrate Hollywood's discriminatory intent if, for example, Klembara was acting at the direction of Hollywood when she monitored Maglangit's work.

6 (Sept. 26, 2006) ("Plaintiff's Motion in Limine Re: Cox Report").  Defendant filed an opposition and Plaintiff filed a supplement to the motion.  <u>See</u> Defendant's Opposition to Plaintiff's Motion in Limine To Admit Commander Directed Report of Investigation Prepared by Lt Col Kimberly Cox into Evidence (Oct. 3, 2006); Plaintiff's Supplement to Her Motion in Limine To Admit Commander Directed Report of Investigation Prepared by Lt. Col. Kimberly Cox into Evidence (Oct. 3, 2006).

Plaintiff also filed a Motion in Limine To Admit the Underlying Statements of Witnesses in the Commander Directed Report of Investigation Prepared by Lt. Col. Kimberly Cox into Evidence, seeking to admit the witness statements contained in the Cox Report.  <u>See</u> Memorandum of Law in Support of Motion in Limine To Admit the Underlying Statements of Witnesses in the Commander Directed Report of Investigation Prepared by Lt. Col. Kimberly Cox into Evidence at 12 (Sept. 26, 2006) ("Plaintiff's Motion in Limine Re: Underlying Statements"); <u>see also</u> Supplement to Motion in Limine Re: Underlying Statements (Oct. 10, 2006). Defendant filed an opposition to this motion as well.  <u>See</u> Defendant's Opposition to Plaintiff's Motion in Limine To Admit the Underlying Statements of Witnesses in the Commander Directed Report of Investigation Prepared by Lt Col Kimberly Cox into Evidence (Oct. 3, 2006).

Additionally, Defendant filed his own motion regarding
the Cox Report, seeking to exclude the entire report from
evidence or in the alternative to exclude those factual findings
not relating specifically to Plaintiff's detail.  See Defendant's
Motion in Limine Precluding Admissibility of the commander
Directed Investigation Conducted by Lt Col Kimberly Cox at 7-8
(Sept. 26, 2006) ("Defendant's Motion in Limine Re: Cox Report").
Plaintiff filed an opposition.  See Plaintiff's Memorandum in
Opposition to Defendant's Motion in Limine Precluding
Admissibility of the Commander Directed Investigation Conducted
by Lt. Col. Kimberly Cox (Oct. 3, 2006).

On October 4, 2006, this Court issued an Order
Regarding Cox Report and Directing Counsel To Meet and Confer
("Order Regarding Cox Report"), setting forth the law applicable
to the motions regarding the Cox Report and informing the parties
of the Court's inclination to admit portions of the report.  The
Court adopts here the analysis contained in that order.

In the Order Regarding Cox Report, the Court left open
the issue of whether the Cox Report is sufficiently trustworthy
to meet the requirements of Rule 803(8)(C).  See Order Regarding
Cox Report at 3-4, 11.  The Court now finds that the factual
findings contained in the Cox Report are trustworthy and should
be admitted into evidence (except for the portions containing
irrelevant, prejudicial, or confusing material, hearsay, or legal

conclusions, as described in the Order Regarding Cox Report).[4/]

Defendant has not come forward with enough negative factors to persuade this Court that the factual findings contained in the report should be inadmissible.  See Gilbrook v. City of Westminster, 177 F.3d 839, 858 (9th Cir. 1999); Johnson v. City of Pleasanton, 982 F.2d 350, 352 (9th Cir. 1992).  First, the investigation was made promptly and concluded in a timely fashion: the complaints were made in January and early February 2004, Cox was appointed to conduct the investigation on February 3, 2004, the investigation took place over a three and a half month period (from February 3 to May 26, 2004), and Cox issued the 86-page report on June 10, 2004.  See Advisory Committee's Notes on Fed. R. Evid. 803(8), 28 U.S.C.App., p. 725 (timeliness of the investigation is a factor that may be of assistance in determining admissibility).  Second, Defendant has presented no evidence that Cox was biased or improperly motivated.  See id. (motivation is a factor that may be of assistance in determining admissibility); Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 168 n.11 (1988) (noting that one factor of trustworthiness analysis is considering any possible bias when reports are prepared with a view to litigation); see also Deposition of Col. Kimberly Cox at 6 (Oct. 11, 2006) (stating that Cox had no biases for or against

---

[4/]The Court notes that its trustworthiness finding goes only to the factual findings contained in the Cox Report.  See infra n.5.

any person when she began her investigation) ("Cox Depo.").

In this case, the detail of the investigation and report is another factor in favor of trustworthiness.  Cox took testimony from 41 witnesses, collected numerous exhibits, and wrote an 86-page, detailed report.  <u>See</u> Cox Report, Index of Witnesses/Subjects/Suspects and Index of Exhibits.  The number of the witnesses interviewed demonstrates thoroughness by Cox. Moreover, the fact that the report sustains some allegations and does not sustain others demonstrates that the report does not rubber stamp the allegations or the denials of the allegations. In light of the detail of the investigation and report, the Court finds that in this case the absence of a formal hearing as part of the investigation does not render the report untrustworthy. <u>See</u> Advisory Committee's Notes on Fed. R. Evid. 803(8), 28 U.S.C.App., p. 725 (whether a hearing was held is one factor that may be of assistance in determining admissibility).

The Court notes that Cox is a nurse whose only experience in investigatory and/or legal matters at the time of this investigation was prior service as an investigating officer for one recruiting issue in 1995.  <u>See</u> Declaration of Kimberly S. Cox at 1 (Sept. 26, 2006).  Additionally, Cox received a briefing from the legal office when she was appointed to be the investigating officer and again at one or more subsequent times during the investigation.  <u>Id.</u>; Cox Depo. at 8.  The Court finds

14

that this lack of expertise does not, in this instance, make the
factual findings contained in the Cox Report untrustworthy;
however, this factor may affect the weight the jury will give the
Cox Report.  See Hines v. Brandon Steel Decks, Inc., 886 F.2d
299, 303 (11th Cir. 1989) (noting that district court may
consider investigator's lack of expertise as going to the weight
of the report).[5/]

     In conclusion, the Court finds that the factual
findings contained in the Cox Report are trustworthy and
admissible pursuant to Rule 803(8)(C), subject to the exceptions
laid out in the Order Regarding Cox Report regarding underlying
hearsay, legal conclusions, relevance, and Rule 403 issues.  If
the parties fail to reach agreement as to what portions of the
Cox Report should be redacted, the Court will address those
specific portions as needed in the future.[6/]  Accordingly, the

_____

     [5/]The Court notes that Cox's lack of legal training may
indicate that the legal conclusions contained in the Cox Report
are untrustworthy; however, the Court has already determined that
the legal conclusions contained in the report are inadmissible
hearsay.  See Order Regarding Cox Report at 6-7.  Additionally,
some particular analysis or conclusions contained in the report -
those that relate to the legal conclusions but are not
necessarily themselves legal conclusions (for example, the
recommendations) - may be untrustworthy because of Cox's lack of
legal training and experience and/or may be precluded under Rule
403.  If necessary, the Court will address those particular
portions of the report at a later date.

     [6/]As discussed at the hearing, by 4 o'clock p.m. on October
13, 2006, the parties must file a revised joint, proposed,
redacted version of the Cox Report, in which counsel have
redacted all inadmissible hearsay, legal conclusions, irrelevant

Court grants (with some exceptions) Plaintiff's Motion in Limine

Re: Cox Report.

**III. Plaintiff's Motion in Limine To Admit the Underlying
     Statements of Witnesses in the Commander Directed Report of
     Investigation Prepared by Lt. Col. Kimberly Cox into
     Evidence**

          As discussed above, Plaintiff filed a Motion in Limine

Re: Underlying Statements, seeking to admit underlying witness

statements contained in the Cox Report.  The Court addressed the

admissibility of the underlying statements in the Order Regarding

Cox Report.  The Court adopts that analysis here and finds that

the underlying witness statements contained in the Cox Report are

inadmissible under Rule 803(8)(C), and therefore may not be

admitted unless they are otherwise permitted by the hearsay

rules.  <u>See</u> Order Regarding Cox Report at 4-5.  Accordingly, the

Court denies Plaintiff's Motion in Limine Re: Underlying

Statements.

          If Plaintiff wishes the Court to admit specific

underlying statements contained in the text of the Cox Report,

Plaintiff must indicate which statements she wants admitted, why

_____

portions, and other portions that should be excluded pursuant to
Rule 403.  Each party should include a separate statement
explaining any disagreement by the parties over specific language
contained in the Cox Report.  As discussed, <u>infra</u>, in footnote 7
and the accompanying text, if Plaintiff proposes that underlying
statements contained in the Cox Report should be admitted,
Plaintiff's submission must include explanations of how each
statement is related to a matter within the scope of the agency
pursuant to Rule 801(d)(2).

16

such statements are relevant, and under what hearsay rule or
exception she seeks admission of the statements.  If, for
example, Plaintiff asserts that a statement is an admission by
party opponent pursuant to Rule 801(d)(2)(D), Plaintiff <u>must</u>
explain how the statement is related to a matter within the scope
of the agency.  <u>See</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1262 (9th
Cir. 1981).  The Court directs Plaintiff to make any such
designations and explanations <u>in writing by 4 o'clock p.m. on
Friday, October 13, 2006</u>.[7]

The Court notes that at the hearing, Plaintiff's
counsel indicated that Plaintiff will not seek to admit any
separate, stand-alone witness statements or transcripts of
interviews that may have been relied on by Cox in preparing the
report.  Instead, counsel indicated that the only separate

---

[7]In Plaintiff's Supplement to Motion in Limine Re:
Underlying Statements, Plaintiff makes a general assertion that
all of the employees who made underlying statements were making
those statements within the scope of their employment because
they were required to be interviewed by Cox.  <u>See</u> Supplement to
Motion in Limine Re: Underlying Statements at 7.  The Court finds
that this broad assertion does not demonstrate that each actual
statement seeking to be admitted concerns a matter within the
scope of the employment.  <u>See</u> Rule 801(d)(2)(D).  For example,
Plaintiff attached a statement by Verna Morgan, a sailing
instructor, about a lifeguard who allegedly wanted to commit
suicide because of a fitness test that was being implemented for
lifeguards.  Plaintiff has not explained how the lifeguard's
emotional state or the lifeguards' fitness test were within the
scope of the sailing instructor's employment.  <u>See</u> 4 Christopher
B. Mueller & Laird C. Kirkpatrick, <u>Federal Evidence</u> § 422 (2d ed.
1994) (discussing what types of statements are within the scope
of employment).

statement/transcript that Plaintiff wishes to use at trial is the
statement of Lt. Col. Hollywood, but that Plaintiff would use
that statement for impeachment purposes only.

**IV.  Plaintiff's Motion in Limine To Strike Certain Expert
Witnesses Identified in Defendant's Final Pretrial Statement**

Plaintiff filed a Motion in Limine To Strike Certain
Expert Witnesses Identified in Defendant's Final Pretrial
Statement, seeking to strike three of Defendant's witnesses from
testifying as expert witnesses because those witnesses were not
timely identified as experts.  See Memorandum of Law in Support
of Plaintiff's Motion in Limine To Strike Certain Expert
Witnesses Identified in Defendant's Final Pretrial Statement at
2-3 (Sept. 26, 2006).  In Defendant's Memorandum in Response to
Plaintiff's Motion in Limine To Strike Certain Expert Witnesses
Identified in Defendant's Final Pretrial Statement, Defendant
indicates that he "does not intend to call the named witnesses
Jan Kuniyoshi, Marivic Penman, and Kathy Shojinaga, as expert
witnesses" but "intends to call these witnesses as lay witnesses
to testify at the trial as designated in its Final Naming of
Witnesses filed on September 26, 2006."  See Defendant's
Memorandum in Response to Plaintiff's Motion in Limine To Strike
Certain Expert Witnesses Identified in Defendant's Final Pretrial
Statement at 2 (Oct. 3, 2006).

Accordingly, the Court grants Plaintiff's Motion in
Limine To Strike Certain Expert Witnesses Identified in

18

Defendant's Final Pretrial Statement.  Defendant may not call Jan Kuniyoshi, Marivic Penman, and Kathy Shojinaga, as expert witnesses, but may call these witnesses as lay witnesses.

**V.  Plaintiff's Motion in Limine To Admit Evidence of the Financial Performance of the Officers Club, Enlisted Club and Sea Breeze Restaurant at Hickam AFB**

Plaintiff filed a Motion in Limine To Admit Evidence of the Financial Performance of the Officers Club, Enlisted Club and Sea Breeze Restaurant at Hickam AFB, seeking to introduce evidence that the Officers Club, Enlisted Club, and Sea Breeze Restaurant (the "Establishments") at Hickam AFB all lost money, but that the Caucasian managers for these activities were not subject to any adverse employment action. See Memorandum of Law in Support of Motion in Limine To Admit Evidence of the Financial Performance of the Officers Club, Enlisted Club and Sea Breeze Restaurant at Hickam AFB at 2 (Sept. 26, 2006) ("Plaintiff's Motion in Limine to Admit Financial Evidence").  Plaintiff contends that evidence regarding poor financial performance of these Establishments "is relevant and admissible to show that Hollywood's decision to remove Plaintiff and detail her to the Teen Center due to the ODR's poor financial performance is a pretext for unlawful discrimination since the Caucasian managers of the [Establishments] were not subject to any adverse employment action for poor financial performance." Id. at 5.

19

Defendant "has no objection to the Plaintiff introducing evidence of the financial performance of the [Establishments]." <u>See</u> Defendant's Opposition to Plaintiff's Motion in Limine To Admit Evidence of the Financial Performance of the Officers Club, Enlisted Club and Sea Breeze Restaurant at Hickam AFB at 3 (Oct. 3, 2006) ("Defendant's Opposition Re: Establishments").[8/]  In the opposition, Defendant asserts that the burden will be on Plaintiff to demonstrate that the managers of the Establishments were similarly situated to Plaintiff.  The Court agrees that the burden of proof is on Plaintiff at trial. <u>See</u> <u>Costa v. Desert Palace, Inc.</u>, 299 F.3d 838, 857 (9th Cir. 2002) (employee's ultimate burden of proof at trial in all cases is "to show by a preponderance of the evidence that the challenged employment decision was 'because of' discrimination"), <u>aff'd</u> 539 U.S. 90 (2003).

Evidence of the financial performance of the Establishments is relevant and highly probative because it goes to whether similarly situated individuals outside of Plaintiff's protected class were treated more favorably than Plaintiff, as described in this Court's Summary Judgment Order. <u>See</u> Summary Judgment Order at 26-31, 36-37; <u>see also</u> Rules 401, 402, 403. However, the Court notes that while financial performance of the

_____

[8/]It is unclear whether Defendant objects to the admission of evidence from fiscal years prior to 2003. <u>See</u> Defendant's Opposition Re: Establishments at 2, 3.

Establishments is relevant for any years where the supervisor(s) of the managers were the same as Plaintiff's supervisor(s), the financial performance may be less relevant in any year where the supervisor(s) of the managers of the Establishments was not the same supervisor(s) of whom Plaintiff now complains.

Accordingly, the Court grants Plaintiff's Motion in Limine to Admit Financial Evidence, but cautions that Defendant may object to such evidence at trial if Defendant questions the relevance for the reasons described above.

## VI.  Plaintiff's Motion in Limine To Admit Testimony of Witnesses Via Video Teleconference, or Alternatively, by Telephone

At the hearing, Plaintiff withdrew her Motion in Limine To Admit Testimony of Witnesses Via Video Teleconference, or Alternatively, by Telephone.  See Memorandum of Law in Support of Motion in Limine To Admit Testimony of Witnesses Via Video Teleconference, or Alternatively, by Telephone (Sept. 26, 2006). Also at the hearing, Defendant indicated that he expects to call Larry Hileman to testify via video conference; Plaintiff indicated that she has no objection to the video conference testimony.  The Court will allow the two-way video conference testimony, finding that good cause has been shown pursuant to Federal Rule of Civil Procedure 43(a).[9/]

_____

[9/]The courtroom manager will administer the oath and the witness will be subject to cross examination.  If counsel wish to show any document to the witness while the witness is testifying via video conference, counsel must provide the document to the

**VII.  Defendant's Motion in Limine Precluding Admissibility of the Commander Directed Investigation Conducted by Lt Col Kimberly Cox**

As discussed above in Section II, the Court denies Defendant's Motion in Limine Re: Cox Report (with some exceptions, as described above).

**VIII. Defendant's Motion in Limine to Exclude Testimony Regarding Non-Selection of Howard Pittman**

Defendant filed a Motion in Limine to Exclude Testimony Regarding Non-Selection of Howard Pittman, seeking to exclude such testimony under Rules 403 and 404(b).  <u>See</u> Motion in Limine To Exclude Testimony Regarding Non-Selection of Howard Pittman at 1-2 (Sept. 26, 2006).  Plaintiff opposed the motion.  <u>See</u> Plaintiff's Memorandum in Opposition to Defendant's Motion in Limine To Exclude Testimony Regarding Non-Selection of Howard Pittman (Oct. 3, 2006).  This motion is denied for the reasons discussed above with respect to Plaintiff's Motion in Limine to Admit Evidence of Discriminatory Conduct by Lt. Col. Hollywood Against Other Non-Caucasian Agency Employees.

---

witness prior to the date of the testimony.  If counsel would like additional parameters to be placed on the use of video conference testimony, counsel should make such a request of the Court prior to trial.

IX.  **Defendant's Motion in Limine to Exclude Testimony Regarding Non-Selection of Tamafaiga Tuiteleleapaga or Recommendation of Eddy Mentzer**

Defendant filed a Motion in Limine to Exclude Testimony Regarding Non-Selection of Tamafaiga Tuiteleleapaga or Recommendation of Eddy Mentzer, seeking to exclude such testimony under Rules 401, 402, and 403.  See Motion in Limine to Exclude Testimony Regarding Non-Selection of Tamafaiga Tuiteleleapaga or Recommendation of Eddy Mentzer at 1-2 (Sept. 26, 2006) ("Defendant's Motion in Limine Re: Tui and Mentzer").  Plaintiff opposes the motion.  See Plaintiff's Memorandum in Opposition to Defendant's Motion in Limine To Exclude Testimony Regarding Non-Selection of Tamafaiga Tuiteleleapaga or Recommendation of Eddy Mentzer (Oct. 3, 2006).

As to testimony regarding the non-selection of Tui, this motion is denied for the reasons discussed above with respect to Plaintiff's Motion in Limine to Admit Evidence of Discriminatory Conduct by Lt. Col. Hollywood Against Other Non-Caucasian Agency Employees.

With respect to testimony regarding the recommendation of Mentzer, Defendant expects Plaintiff to offer evidence that in August and September 2003, management (Hileman and Hollywood) recommended Mentzer for a vacant GS-9/10 position; this was the same position that Tui later applied for and did not receive.  See Defendant's Motion in Limine Re: Tui and Mentzer at 2-4.

23

Mentzer did not receive the job either and, according to Defendant, Mentzer was recommended before Tui applied for the job or became employed by Outdoor Recreation. Id. at 3-4.

Defendant argues that presentation of the evidence regarding Mentzer is confusing and a waste of time. Id. at 6-7. The Court disagrees because the evidence is probative as to whether management discriminated against Tui and whether management had a preference to hire a Caucasian for the position for which Tui applied. As discussed above, prior discriminatory actions against Tui are relevant and highly probative as to management's intent and motive in taking adverse action(s) against Plaintiff.

The Court finds that the probative value of the evidence substantially outweighs any danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. See Rule 403. First, the date of the recommendations (before Tui was employed by Outdoor Recreation) does not substantially decrease the evidence's probative value, since the recommendations could still be interpreted to demonstrate a preference for Caucasians in general. Second, it is of no consequence that Plaintiff herself did not know Mentzer's race - the relevant factor is whether Hileman and Hollywood knew Mentzer's race. Third, even if Mentzer did not actually apply for the job in the end (for

24

reasons apparently unknown), his recommendation could still demonstrate a general preference by management to put a Caucasian into the vacant position.  <u>See</u> Summary Judgment Order at 37-38 (noting that evidence regarding Mentzer contributes to Plaintiff's evidence that Hollywood sought to hire Caucasian employees while blocking the hiring of non-Caucasian employees, and that such evidence could demonstrate that discrimination motivated Hollywood to treat Plaintiff different than Caucasian employees).

Accordingly, the Court denies Defendant's Motion in Limine Re: Tui and Mentzer and finds that evidence regarding the non-selection of Tui and the recommendation of Mentzer is admissible to demonstrate the employer's motive and intent in taking adverse actions against Plaintiff.

**X.   Defendant's Motion in Limine Excluding Testimony Regarding Weather Conditions During Fiscal Year 2003**

Defendant filed a Motion in Limine Excluding Testimony Regarding Weather Conditions During Fiscal Year 2003, seeking to prohibit Plaintiff from introducing any evidence that inclement whether was to blame for the poor financial performance of ODR in fiscal year 2003.  <u>See</u> Defendant's Motion in Limine Excluding Testimony Regarding Weather Conditions During Fiscal Year 2003 at 1-2 (Sept. 26, 2006) ("Defendant's Motion in Limine Re: Weather").  Defendant argues that evidence of the weather should not be admitted because Plaintiff has not identified any

25

witnesses or exhibits through which to present any evidence of
unusual weather patterns, other than Plaintiff herself, and
(Defendant argues) such testimony by Plaintiff would be
speculative.  Id. at 2-3.

        In her opposition, Plaintiff states that Mary Anne
Seidl (Plaintiff's former immediate supervisor) and Plaintiff
will testify that ODR is not expected to generate revenue, but is
a weather-dependent, seasonal activity that may generate a profit
in months with good weather and operate at a loss in months with
poor weather.  See Plaintiff's Memorandum in Opposition to
Defendant's Motion in Limine Excluding Testimony Regarding
Weather Conditions During Fiscal Year 2003 at 3-4 (Oct. 3, 2006).
According to Plaintiff's opposition, Seidl and Plaintiff will
also testify as to their recollections of the seasonal weather at
ODR in fiscal year 2003.  Id. at 4.  However, at the hearing,
Plaintiff's counsel indicated that Plaintiff would present no
testimony of the seasonal weather in fiscal year 2003.

        The Court finds that the evidence regarding the weather
during fiscal year 2003, and the weather's relationship to
profits, is relevant to the issues of whether Plaintiff was
performing her job according to legitimate expectations and
whether Defendant's proffered rationale (that it detailed
Plaintiff to the Teen Center, in part, because of ODR's poor
financial performance) was pretextual.  See Rules 401 and 402;

26

see also Summary Judgment Order at 24.  If offered, the
witnesses' testimony regarding the weather in fiscal year 2003 is
not unduly speculative because it will be based on the witnesses'
own observations and experiences.  Additionally, the probative
value of the evidence outweighs any danger of unfair prejudice,
confusion of the issues, or misleading the jury.  See Rule 403.

Accordingly, Defendant's Motion in Limine Re: Weather
is denied.

**XI.  Defendant's Motion in Limine Excluding Testimony Regarding
Behavior of Plaintiff's Husband and His Subsequent Barment
from Hickam Air Force Base**

Defendant filed a Motion in Limine Excluding Testimony
Regarding Behavior of Plaintiff's Husband and His Subsequent
Barment from Hickam Air Force Base, seeking to prohibit Plaintiff
from introducing any evidence or testimony regarding the behavior
of Plaintiff's husband towards members of the 15th Services
Squadron staff and his subsequent barment from the base.  See
Defendant's Motion in Limine Excluding Testimony Regarding
Behavior of Plaintiff's Husband and His Subsequent Barment from
Hickam Air Force Base at 1-2 (Sept. 26, 2006) ("Defendant's
Motion in Limine Re: Plaintiff's Husband").  According to
Plaintiff, her husband (Ken Sussel) was in the Hawaii Air
National Guard and delivered some of Plaintiff's leave slips and
medical documents to Plaintiff's supervisors on Hickam Air Force
Base.  See Plaintiff's Memorandum in Opposition to Defendant's

27

Motion in Limine Excluding Testimony Regarding Behavior of Plaintiff's Husband and His Subsequent Barment from Hickam Air Force Base at 5 (Oct. 3, 2006).  Plaintiff alleges that Hileman and Klembara made complaints against Mr. Sussel to Mr. Sussel's commanding officer, and that as a result, Mr. Sussel was barred from the base for several months.  <u>Id.</u> at 5-6.  Plaintiff argues that evidence that Defendant barred Mr. Sussel from the base "is relevant to demonstrate to the jury a pattern of antagonism against Plaintiff for her prior EEO activity."  <u>See</u> <u>id.</u> at 6.[10/]

Evidence of a pattern of antagonism following protected conduct is relevant to demonstrate a causal link between the protected conduct and the act of retaliation.  <u>See</u> <u>Porter v. California Dep't of Corrections</u>, 419 F.3d 885, 895 (9th Cir. 2005); <u>see also</u> Summary Judgment Order at 52-56.  Here, the Court finds that evidence regarding Mr. Sussel's barment from base (and the circumstances leading up to that barment) are relevant to the issue of causation for Plaintiff's retaliation claim, because a fact finder could infer that the complaint against Mr. Sussel demonstrates one piece in a pattern of antagonism against Plaintiff after her protected activity.  <u>See</u> Rules 401 and 402;

---

[10/]The Court notes that Klembara did not hold a supervisory position over Plaintiff; however, Klembara's actions could be relevant to demonstrate Plaintiff's supervisor's discriminatory intent if, for example, Klembara was acting at the direction of those supervisors.

see also Summary Judgment Order at 55 n.22.[11/]  Additionally, the Court finds that the probative value of this evidence outweighs any danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.  See Rule 403.

Accordingly, the Court denies Defendant's Motion in Limine Re: Plaintiff's Husband.

## XII. Defendant's Objections to Plaintiff's Exhibits

On October 3, 2006, Defendant filed nine written objections to Plaintiff's exhibits.  See Defendant's Objections to Plaintiff's Exhibits (Oct. 3, 2006).  The Court will address each objection separately.

### A.   Objection to Plaintiff's Exhibits 33-34.4

Defendant objects to admission of the Hickam Services operating statements for lack of foundation, arguing that Plaintiff has not designated witnesses who are qualified to speak to these operating statements or who can lay the appropriate foundation as to admissibility.  See Defendant's Objections to Plaintiff's Exhibits at 2.  At this time, the Court denies Defendant's objection to the Hickam Services operating statements

---

[11/]The Court notes that it does not understand Plaintiff to be alleging a separate claim for retaliation based on Mr. Sussel's barment.  See, e.g., Summary Judgment Order at 63 (listing the claims remaining for trial).  In other words, the Court does not interpret Plaintiff's argument to be that she is complaining that the barment itself constituted an adverse action against her in violation of Title VII.

(Pl. Ex. 33-34.4) because it appears to the Court that Plaintiff has witnesses on her witness list who may be familiar with these statements and may be able to lay the appropriate foundation. For example, Plaintiff has named a number of witnesses who are or were managers at Hickam AFB: Hileman, the former Deputy Director of the 15th Service Squadron; Jones, the former 15th Service Squadron Commander; and Hollywood, the Commander of the 15th Service Squadron.  Defendant may renew his objection at trial if he believes Plaintiff has not established proper foundation to admit the documents.

**B.    Objection to Plaintiff's Exhibits 43-47, 49-56, 58-75, and 77-99**

Defendant objects to admission of the affidavits, transcripts of statements, and transcripts of interviews of witnesses testifying at trial, on the basis that these transcripts are inadmissible hearsay.  <u>See</u> Defendant's Objections to Plaintiff's Exhibits at 2.  The Court finds that these affidavits and transcripts generally constitute inadmissible hearsay under Rules 801 and 802, although portions may be admissible if they are non-hearsay, under Rule 801(d), or if they meet an exception to the hearsay rule, under Rules 803 or 804.  However, the Court finds that Defendant's objection is moot because Plaintiff's counsel indicated, at the hearing, that Plaintiff will not seek to admit these transcripts into evidence (although he will seek to use the transcript of Hollywood's

interview to impeach Hollywood).

C.   **Objection to Plaintiff's Exhibits 57 and 76**

Defendant objects to admission of the transcripts of statements made by Calvin Pascua and Craig Haitsuka on the basis that Pascua and Haitsuka have not been named as witnesses, so the parties will not have an opportunity to question the witnesses about their prior statements.  See Defendant's Objections to Plaintiff's Exhibits at 2.  As discussed above, Defendant's objection is moot because Plaintiff's counsel indicated, at the hearing, that Plaintiff will not seek to admit these transcripts into evidence.

D.   **Objection to Introduction of Cox Report**

Defendant objects to the admission of the Cox Report as irrelevant and prejudicial under Rules 402 and 403.  See Defendant's Objections to Plaintiff's Exhibits at 3.  For the reasons described with respect to the motions in limine regarding the Cox Report, the Court finds that portions of the Cox Report are admissible.  Accordingly, the Court denies Defendant's objection.

E.   **Objection to Plaintiff's Exhibits 103-103.5**

Defendant objects to admission of documents relating to Ken Sussel, Plaintiff's husband, as hearsay and irrelevant under Rules 402 and 802.  See Defendant's Objections to Plaintiff's Exhibits at 3-4.  For the reasons described with respect to

31

Defendant's Motion in Limine Re: Plaintiff's Husband, the Court finds that the evidence is relevant and its probative value outweighs any danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.  <u>See</u> Rules 401, 402, 403.

With respect to Defendant's hearsay objection, at this time, the Court denies the objection because it appears that the evidence meets an exception to the hearsay rule for records of regularly conducted activity.  <u>See</u> Rule 803(6).  Accordingly, Plaintiff may proffer the evidence at trial if she feels that it meets the criteria for admissibility; Defendant may raise an objection at trial if he feels that the evidence is inadmissible.

**F.  Objection to Plaintiff's Exhibits 108-108.5**

Defendant objects to the memoranda relating to Todd Akamine as hearsay.[12/]  <u>See</u> Defendant's Objections to Plaintiff's Exhibits at 4.  The memoranda appear to meet an exception to the hearsay rule for records of regularly conducted activity, so the Court will not exclude them from evidence at this time on the basis of hearsay.  <u>See</u> Rule 803(6).  However, the Court finds that, at this time, the exhibits appear irrelevant to Plaintiff's claims under Title VII.  Therefore, the Court grants Defendant's

---

[12/]The memoranda record Akamine's absences from and reprimands related to his job in ODR, and include letters from Plaintiff to Akamine regarding Akamine's removal from employment.

objection to Plaintiff's Exhibits 108-108.5, finding that if
Plaintiff wishes to offer these exhibits into evidence at trial,
Plaintiff must make a proffer to the Court demonstrating the
relevance and admissibility of these exhibits.

**G.   Objection to Plaintiff's Exhibits 109-116.6**

Defendant objects to admission of the memoranda and
personnel action information regarding Denise S. Matsuda, Matthew
Sojot, Calvin Pascua, Bernard Miller, Butch Fellezs, Rodney
Hooper, and Lisa Mau as irrelevant, hearsay, and lacking
foundation. <u>See</u> Defendant's Objections to Plaintiff's Exhibits
at 4-5. At this time, the documents appear to be irrelevant to
Plaintiff's claim under Title VII - these people appear to be
former ODR employees who served under Plaintiff and were
admonished for poor work performance. Even if relevant, the
documents' limited probative value appears to be substantially
outweighed by considerations of undue delay and waste of time.
Accordingly, at this time, the Court grants Defendant's objection
to Plaintiff's Exhibits 109-116.6. However, Plaintiff may
proffer the evidence at trial if Plaintiff can demonstrate the
evidence's relevance and admissibility (including what hearsay
exception each document meets). Additionally, the Court notes
that some of the documents contain confidential personnel
information, such a social security numbers, that should be
redacted if the documents are offered into evidence. Finally,

33

the Court notes that if offered, Plaintiff must establish the
foundation and authenticity of these documents (as Plaintiff must
do for any document).

   H.   **Objection to Plaintiff's Exhibit 140**

        Defendant objects to admission of an email string
between (among others) Col. John Mederios and Hollywood, arguing
that the email is irrelevant.  See Defendant's Objections to
Plaintiff's Exhibits at 5.  The email discusses an anticipated
unfair labor practices complaint involving Hollywood's actions in
ODR, and includes a statement by Hollywood to "Let the fun and
games begin . . . As info – a 120 [day] detail is within the CCs
scope so [I] am not worried about that.  Not sure if it [is]
Carol who filed, but . . . ."  The Court denies Defendant's
objection, finding that the email string (or at least portions
thereof) is relevant to Plaintiff's claims because the email
states that Plaintiff may have filed the complaint and explains
that a detail was within Hollywood's power.  The Court notes that
if Defendant feels that Plaintiff has not demonstrated the
relevance of other portions of this email string at trial,
Defendant may raise an appropriate objection at trial.
Similarly, Defendant may raise other objections to the document,
as appropriate.

**I.    Objection to Plaintiff's Exhibit 105**

Defendant does not object to the inclusion of the EEO
report 9Q0R04014 as long as the companion report, 9Q0R04015, is
also included in evidence for completeness under Rule 106.  <u>See</u>
Defendant's Objections to Plaintiff's Exhibits at 5.  At this
time, the Court has not been provided with a copy of the
companion report, so the Court cannot rule on whether it should
be included for completeness.  Accordingly, Defendant's objection
is denied; Defendant may raise an appropriate objection at trial.

<u>**CONCLUSION**</u>

Subject to the limitations described herein, the Court
grants the following motions in limine: (1) Plaintiff's Motion in
Limine to Admit Evidence of Discriminatory Conduct by Lt. Col.
Hollywood Against Other Non-Caucasian Agency Employees; (2)
Plaintiff's Motion in Limine to Admit Commander Directed Report
of Investigation Prepared by Lt. Col. Kimberly Cox into Evidence;
(3) Plaintiff's Motion in Limine To Strike Certain Expert
Witnesses Identified in Defendant's Final Pretrial Statement; and
(4) Plaintiff's Motion in Limine To Admit Evidence of the
Financial Performance of the Officers Club, Enlisted Club and Sea
Breeze Restaurant at Hickam AFB.

Subject to the limitations described herein, the Court
denies the following motions in limine: (1) Plaintiff's Motion in
Limine To Admit the Underlying Statements of Witnesses in the

35

Commander Directed Report of Investigation Prepared by Lt. Col. Kimberly Cox into Evidence; (2) Defendant's Motion in Limine Precluding Admissibility of the Commander Directed Investigation Conducted by Lt Col Kimberly Cox; (3) Defendant's Motion in Limine to Exclude Testimony Regarding Non-Selection of Howard Pittman; (4) Defendant's Motion in Limine to Exclude Testimony Regarding Non-Selection of Tamafaiga Tuiteleleapaga or Recommendation of Eddy Mentzer; (5) Defendant's Motion in Limine Excluding Testimony Regarding Weather Conditions During Fiscal Year 2003; and (6) Defendant's Motion in Limine Excluding Testimony Regarding Behavior of Plaintiff's Husband and His Subsequent Barment from Hickam Air Force Base.

The Court grants Defendant's objections to the following exhibits, finding that they are not admissible at trial unless Plaintiff makes a sufficient proffer of admissibility, as described herein: Plaintiff's Exhibits 108-108.5 and 109-116.6.

The Court cautions that these rulings are preliminary and are not meant to prevent the parties from making other evidentiary challenges at trial that have not been directly addressed by this order, for example if counsel fails to lay a foundation or seeks to admit inadmissible hearsay.

36

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 12, 2006.



_Alan C. Kay_____
Alan C. Kay
Sr. United States District Judge

37