IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CAROLE C. SUSSEL, | ) | Civ. No. 05-00444 ACK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL WYNNE, Secretary of the Air Force, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY, MOTION FOR NEW TRIAL

I.    BACKGROUND

Carole C. Sussel ("Plaintiff") brought this action against Secretary of the Air Force Michael Wynne ("Defendant") for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.[1] An eleven day jury trial was held on two counts of disparate treatment and two counts of retaliation. The jury returned a verdict for Defendant on all four counts.

As to Count 1 (Plaintiff's claim for disparate treatment for detail to the Teen Center), the jury found that

_____

[1] For a detailed discussion of the factual and procedural background of this case, see this Court's September 12, 2006 Order Granting in Part and Denying in Part Defendant's Motion for Partial Dismissal and Granting in Part and Denying in Part Defendant's Motion for Summary Judgment.

Plaintiff did <u>not</u> prove by a preponderance of the evidence that her detail to the Teen Center was an adverse employment action. <u>See</u> Special Verdict Form at 1 (Nov. 2, 2006).  As to Count 2 (Plaintiff's claim of disparate treatment for termination from employment), the jury found that Plaintiff did <u>not</u> prove by a preponderance of the evidence that Plaintiff's race, color, and/or national origin was a motivating factor for Defendant's decision to terminate her from employment.  <u>Id.</u> at 4.  As to Count 3 (Plaintiff's claim of retaliation for alteration of Plaintiff's detail), the jury found that Plaintiff did <u>not</u> prove by a preponderance of the evidence that Defendant subjected Plaintiff to an adverse employment action by altering her detail to the Teen Center.  <u>Id.</u> at 6.  As to Count 4, (Plaintiff's claim of retaliation for termination from employment), the jury found that Plaintiff did <u>not</u> prove by a preponderance of the evidence that "the protected activity was one of the reasons [D]efendant subjected [P]laintiff to termination from employment and that but for such activity, there would have been no termination from employment."  <u>Id.</u> at 8.  The jury was instructed not to answer any additional questions relating to any of the counts since, pursuant to these findings in the first question of each count, Defendant could not be held liable under those counts.

Pursuant to the jury's verdict, judgment was entered in favor of Defendant on all counts on November 3, 2006.

2

Plaintiff filed a Motion for Judgment as a Matter of Law or Alternatively, Motion for New Trial and Memorandum of Law in Support of Motion ("Motion") on November 13, 2006.  Defendant filed a Response on November 22, 2006.  The Court finds the Motion suitable for disposition without a hearing.  <u>See</u> L.R. 7.2(d).

## II.  (RENEWED) MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.   STANDARD

Federal Rule of Civil Procedure 50 ("Rule 50") states, in relevant part:

> (a) Judgment as a Matter of Law.
> (1) In General.  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
> (2) Motion.  A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.
> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial.  If the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.  The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment or – if the motion addresses a jury issue not decided by a verdict – no later than 10 days after the jury was discharged.  The movant may alternatively request a new trial or join a motion for

a new trial under Rule 59.
In ruling on a renewed motion, the court may:
(1) if a verdict was returned:
(A) allow the judgment to stand,
(B) order a new trial, or
(C) direct entry of judgment as a matter of law; or
(2) if no verdict was returned:
(A) order a new trial, or
(B) direct entry of judgment as a matter of law.

Fed. R. Civ. P. 50(a) and (b) (effective Dec. 1, 2006).[2]

The U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") "strictly adhere[s] to the requirements of Rule 50(b), which prohibit a party from moving for judgment as a matter of law after the jury's verdict unless that motion was first presented at the close of evidence." <u>Image Technical Services, Inc. v. Eastman Kodak Co.</u>, 125 F.3d 1195, 1212 (9th Cir. 1997). If a party fails to make a motion for judgment as a matter of law under Rule 50(a) <u>before</u> the case is submitted to the jury, "a party cannot question the sufficiency of the evidence either before the district court . . . or on appeal." <u>Cabrales v. County of Los Angeles</u>, 864 F.2d 1454, 1459 (9th Cir. 1988) (emphasis altered).

The single exception to this rule is the plain error doctrine. <u>Id.</u> Only where there is such plain error apparent on the face of the record that failure to review would result in a

---

[2]The standard applied by this Court in the instant case is the same under this new version or the prior version of Rule 50. <u>See, e.g.</u>, Fed. R. Civ. P. 50, Advisory Committee Notes for 2006 Amendment (discussing the changes to Rule 50).

manifest miscarriage of justice should the motion be granted.
Id.  In other words, there must be "an absolute absence of
evidence to support the jury's verdict" for a court to grant a
post-trial motion for judgment as a matter of law where the party
failed to move for judgment as a matter of law before the case
was submitted to the jury.  See Image Technical Services, 125
F.3d at 1212.

B.    DISCUSSION

"Plaintiff acknowledges that she did not make a motion
for [judgment as a matter of law] before the closing of all the
evidence" and that, as a result, her current Rule 50(b) motion
for judgment as a matter of law may only be granted if "plain
error is apparent on the face of the record."  See Motion at 18.
Plaintiff argues that plain error is apparent for two reasons:
(1) the verdict goes against the weight of the evidence and (2)
the duration of jury deliberations demonstrates that the verdict
was not the result of adequate deliberation.  See id. at 1-16.
The Court disagrees, finding that no error is apparent on the
face of the record.

1.    No Plain Error in the Verdict

As will be discussed in detail with respect to the
motion for new trial, infra section III.B., Defendant introduced
substantial evidence at trial in support of each of the jury's
findings on each count.  Plaintiff has made no showing of any

5

"absolute absence of evidence to support the jury's verdict."
See Image Technical Services, 125 F.3d at 1212.  Accordingly, the
Court finds no plain error in the verdict.

### 2.    No Plain Error in Length of Deliberation

Plaintiff argues that the verdict should be overturned
because the jury "reached a decision before considering any of
the documents or testimonial evidence submitted to it and before
engaging in any sort of deliberation."  See Motion at 16.  In
support of this argument, Plaintiff points to the fact that the
jury deliberated for slightly longer than one hour despite having
sat through ten days of testimony at trial.  Id. at 15.

As will be discussed in detail with respect to the
motion for new trial, infra section III.B., Defendant introduced
extensive evidence in support of the defense.  In light of the
strong case presented by the defense, the Court finds that the
length of the jury's deliberation does not indicate any plain
error or miscarriage of justice.

Accordingly, the Court finds that no manifest
miscarriage of justice will result in denial of the motion for
judgment as a matter of law.  Plaintiff's motion for judgment as
a matter of law is denied.

6

III.  **MOTION FOR NEW TRIAL**

    A.    **STANDARD FOR MOTION FOR NEW TRIAL**

       A motion for new trial is governed by Federal Rule of Civil Procedure 59 ("Rule 59"), which provides in relevant part:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

Fed. R. Civ. P. 59(a).

       The Ninth Circuit has consistently held that a district court's finding that there is substantial evidence to uphold the verdict on a motion for judgment as a matter of law will not necessarily prevent the Court from ordering a new trial. However, Ninth Circuit case law has been less consistent in articulating the circumstances that warrant a new trial based on insufficiency of the evidence, stating variously that district courts have discretion to grant Rule 59 motions when the verdict is "against the clear [or 'great'] weight of the evidence," when the evidence shows that the jury has reached a "seriously erroneous result," and/or when the evidence shows that acceptance of the verdict would cause a "miscarriage of justice."  See EEOC v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997) (internal quotations and citations omitted) ("Although the court's ruling on an alternative motion for a new trial involves the exercise of

7

some discretion, a stringent standard applies when the motion is based on insufficiency of the evidence.  A motion will be granted on this ground only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result."); Roy v. Volkswagen of America, 896 F.2d 1174, 1176 (9th Cir. 1990) ("The trial court may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.") (citing Hanson v. Shell Oil Co., 541 F.2d 1352, 1359 (9th Cir. 1976)) (internal quotation omitted); Landes Const. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987) ("If there is substantial evidence presented at trial to create an issue for the jury, a trial court may not grant a motion for a directed verdict or for judgment notwithstanding the verdict.  The existence of substantial evidence does not, however, prevent the court from granting a motion for a new trial pursuant to Fed. R. Civ. P. 59 if the verdict is against the clear weight of the evidence.").

While the Court has discretion to assess the evidence within these frameworks ("against the clear weight of the evidence," "seriously erroneous result," "miscarriage of justice"), the standard for finding insufficient evidence

8

warranting a new trial remains high.  See Roy, 896 F.2d at 1176

("While the trial court may weigh the evidence and credibility of

the witnesses, the court is not justified in granting a new trial

'merely because it might have come to a different result from

that reached by the jury.'") (citing Wilhelm v. Associated

Container Transportation (Australia) Ltd., 648 F.2d 1197, 1198

(9th Cir. 1981)).

In most cases, the judge should accept the findings of

the jury; however, if the judge is left with the definite and

firm conviction that a mistake has been committed, he may grant a

new trial:

> On the one hand, the trial judge does not sit
> to approve miscarriages of justice.  His
> power to set aside the verdict is supported
> by clear precedent at common law and, far
> from being a denigration or a usurpation of
> jury trial, has long been regarded as an
> integral part of trial by jury as we know it.
> On the other hand, a decent respect for the
> collective wisdom of the jury, and for the
> function entrusted to it in our system,
> certainly suggests that in most cases the
> judge should accept the findings of the jury,
> regardless of his own doubts in the matter .
> . . .  If, having given full respect to the
> jury's findings, the judge on the entire
> evidence is left with the definite and firm
> conviction that a mistake has been committed,
> it is to be expected that he will grant a new
> trial.

Landes, 833 F.2d at 1371-72 (internal quotation and citations

omitted).  "The judge can weigh evidence and assess the

credibility of witnesses, and need not view the evidence from the

perspective most favorable to the prevailing party." <u>Id.</u>

Although the Court will apply each of the above considerations in deciding Defendant's motion for new trial, for the sake of clarity the Court will hereinafter refer to the "against the clear weight of the evidence" standard, which is most commonly used by the courts.

   **B.   DISCUSSION**

Plaintiff argues that a new trial is warranted because (1) the verdict is contrary to the clear weight of the evidence and (2) the duration of jury deliberations demonstrates that the verdict was not the result of adequate deliberation.  <u>See</u> Motion at 1-16, 19.  Having already found that judgment as a matter of law is not appropriate under Rule 50, the Court will now assess whether a new trial is appropriate under Rule 59.

   **1.   Not Against the Clear Weight of the Evidence**

Defendant presented substantial, credible testimony in defense of Plaintiff's claims.  Weighing all the testimony and assessing credibility of all the witnesses, the Court finds that the verdict for Defendant on all counts is consistent with the clear weight of the evidence.

   **a.   Count 1**

With respect to Count 1 (Plaintiff's claim of disparate treatment for detail to the Teen Center), the jury found that Plaintiff did <u>not</u> prove by a preponderance of the evidence that

10

her detail to the Teen Center was an adverse employment action. See Special Verdict Form at 1 (Nov. 2, 2006).[3/]  Substantial evidence supports this finding.

Jan Kuniyoshi, Chief of Classification and Staffing at the Hickam civilian personnel office, specifically testified that detailing is not an adverse action for personnel purposes.  See Trial Transcript vol. 10 at 109 (Nov. 1, 2006).  Ms. Kuniyoshi testified that it is common for people to be detailed to a different job within the same job series, just as Plaintiff was detailed, and that such detailing is temporary and not considered to be punitive in nature.  See id. at 105-106.  Ms. Kuniyoshi appeared to be a disinterested, credible witness, testifying about personnel matters within her expertise.  Ms. Kuniyoshi's testimony alone sufficiently supports the jury's finding that the detail was not an adverse action; however, other evidence also supports the finding.[4/]

_____

[3/]Jury Instruction No. 16, which was agreed upon by the parties, stated in relevant part:

As to the plaintiff's claim[] that her race, color, and/or national origin was a motivating factor for the defendant's decision[] to detail her to the Teen Center . . . plaintiff must prove that she suffered an adverse employment action.  An action is an adverse employment action if it materially affects the terms, conditions, or privileges of employment.

[4/]Like Ms. Kuniyoshi, Lt. Col. Denise Hollywood also testified that Plaintiff's detail was not an adverse personnel action.  See Trial Transcript vol. 4 at 21 (Oct. 20, 2006). Although Hollywood's testimony in this respect supports Ms. Kuniyoshi's testimony, in general, Hollywood (as the supervisor

11

According to a personnel action form introduced into evidence, Plaintiff's basic pay was not affected by the temporary detail.  <u>See</u> Trial Exhibit 414.  Plaintiff did not introduce any evidence that her pay suffered as a result of the detail.

Lt. Col. Hollywood testified that she detailed Plaintiff, at least in part, so that Plaintiff would have the time to attend managerial training.  <u>See</u> Trial Transcript vol. 4 at 21 (Oct. 20, 2006).  Plaintiff herself testified that there was room for improvement in her management at ODR and that she would have benefitted from the training she was scheduled to receive during her detail.  <u>See</u> Trial Transcript vol. 7 at 150 (Oct. 26, 2006).  This testimony supports a finding that the detail was not adverse, since Plaintiff acknowledges that the training would have been beneficial.

This evidence substantially supports the jury's finding that Plaintiff's detail to the Teen Center was not an adverse action.  Having weighed all the evidence and assessed credibility, the Court is not persuaded that the verdict as to Count 1 is against the clear weight of the evidence.  Although Plaintiff has introduced some evidence indicating that the detail

---

who detailed Plaintiff and allegedly discriminated against her)
has an interest in the outcome of the litigation, and is
therefore a less credible witness than Ms. Kuniyoshi.

was an adverse action,[5/] certainly equal or stronger evidence supports the jury's finding.  Considering all of the evidence as a whole, the Court is not left with any definite or firm conviction that a mistake has been committed as to Count 1.[6/]

### b.   Count 2

With respect to Count 2 (Plaintiff's claim of disparate treatment for termination from employment), the jury found that Plaintiff did not prove by a preponderance of the evidence that Plaintiff's race, color, and/or national origin was a motivating factor for Defendant's decision to terminate her from employment. See Special Verdict Form at 4.  Substantial evidence supports this finding.

---

[5/]Plaintiff introduced some evidence that her detail to the Teen Center materially affected the terms of her employment. First, Plaintiff was informed that she would have to work some evenings and weekends at the Teen Center, which was different from her normal schedule at ODR.  See Trial Transcript vol. 7 at 90 (Oct. 26, 2006).  Second, Plaintiff had no interest in any career enhancement type benefit that she would obtain by a detail to the Teen Center since she was only interested in outdoor recreation, and no other type of activity.  Third, the grade level of the position into which Plaintiff was detailed was lower than Plaintiff's grade level at ODR (despite the fact that she maintained the same basic pay).  See Trial Exhibit 414.

[6/]Once the jury found that Plaintiff's detail was not an adverse action, the jury was instructed not to answer the remainder of the questions on the Special Verdict Form relating to Count 1 because, without any adverse action, Defendant could not be held liable under that count.  See Special Verdict Form at 2.  Since the Court finds that the jury's finding of no adverse action in Count 1 was not against the clear weight of the evidence, the Court need not discuss the evidence in support of or against the remaining Special Verdict Form questions under Count 1, which were not answered by the jury.

The parties both presented evidence that Plaintiff left work on January 7, 2004 - the day that she was scheduled to begin her detail at the Teen Center - and never returned because she was (or was claiming to be) ill.[7/]  She was terminated over a year later, effective March 4, 2005.  <u>See</u> Trial Exhibit 409. Elizabeth Hodge and Frank Faria, Plaintiff's immediate supervisors during Plaintiff's extended sick leave, testified that Plaintiff's contact with her supervisors and medical documentation during her absence was less substantive than expected and at times unacceptable.  For example, Ms. Hodge testified that Plaintiff did not contact her for the first three weeks of her absence to inform Ms. Hodge about the nature of Plaintiff's illness, despite Plaintiff's responsibility to do so. <u>See</u> Trial Transcript vol. 4 at 157 (Oct. 20, 2006).  Ms. Hodge and Mr. Faria both testified that Plaintiff's various medical documentation would state that she was able to return to work by a certain date, but then around that date Plaintiff would submit new medical documentation indicating that she could not return until a later date; this pattern continued throughout Plaintiff's leave.  <u>See</u> Trial Transcript vol. 4 at 159-160; Trial Transcript

---

[7/]Plaintiff testified regarding her illness.  The Court notes that Plaintiff's credibility regarding the extent of her illness was weakened by Plaintiff's own admission that, in October through December of 2004, she claimed to be permanently disabled, but then as of January 2005, she claimed to be able and available to work.  <u>See</u> Trial Transcript vol. 8 at 43-49 (Oct. 27, 2006).

vol. 5 at 87 (Oct. 24, 2006).  Furthermore, documentation from
Plaintiff's doctor indicated that Plaintiff may never be able to
return to work with the personnel that was in place.  See Trial
Exhibit 391-C at 02109; see also Trial Transcript vol. 5 at 90-
94.

Plaintiff was placed on absent without leave ("AWOL")
status for approximately three months in late 2004 because she
had exhausted all of her leave.  See Trial Transcript vol. 5 at
90-91; see also Trial Exhibit 409.  Mr. Faria testified that
Plaintiff failed to report to work on two occasions (in November
and December 2004) on which he ordered her to report to work.
See Trial Transcript vol. 5 at 99-106.  Kathryn Shojinaga (the
former chief of the employee management relations section of the
Hickam civilian personnel office who advised Hodge, Faria, and
Larry Hileman on personnel issues regarding Plaintiff's sick
leave and eventual termination) testified that Plaintiff and her
counsel failed to contest Plaintiff's AWOL status or her failure
to report to work, as documented in the notice of proposed
termination sent to Plaintiff in December 2004.  See Trial
Transcript vol. 10 at 134 (Nov. 1, 2006).[8/]  Larry Hileman, the
Deputy Director of the 15th Services Squadron, removed Plaintiff

---

[8/]Ms. Shojinaga also testified that in her 20 years of
government personnel service, she has never seen a supervisor act
the way Plaintiff acted in calling in sick for over a year.  See
Trial Transcript vol. 10 at 137-138.

from employment because of her three month AWOL status and her failure to report to work as ordered on those two occasions.  See Trial Exhibit 409.

Certainly, Defendant introduced significant evidence that Plaintiff was terminated because she stopped showing up to work for over a year and had demonstrated no indication that she would be returning to work in the near future.  Conversely, any evidence introduced by Plaintiff that discrimination was also a motivating factor in her termination was weak at best.  For example, Plaintiff presented some evidence that Hollywood may have held a racial bias against Asian/Pacific Islanders,[9] but

_____

[9]Plaintiff presented evidence that Hollywood may have held a racial bias against Asian/Pacific Islanders.  For example and in addition to other evidence, Plaintiff presented evidence that upon meeting Plaintiff, Hollywood peppered Plaintiff with questions about her background, including whether Plaintiff was "local" or "Hawaiian."  See Trial Transcript vol. 7 at 49-52 (Oct. 26, 2006).  Retired Col. Harvey Jones testified that Hollywood made reference to "these people" - a phrase that troubled him and that he believed could have been used by Hollywood to reference ethnic minorities.  See Trial Transcript vol. 4 at 77-78 (Oct. 20, 2006).  However, Defendant presented evidence that Hollywood did not hold any racial bias and did not discriminate against anyone.  For example, Hollywood testified that she: asked Plaintiff questions about Plaintiff's background because she was just trying to get to know Plaintiff and make small talk; did not use the phrase "these people" in her conversation with Jones; does not hold a bias against Asian/Pacific Islanders; and has dated a person of Asian/Pacific Island descent.  See id., vol. 4 at 10-12, 52; Trial Transcript vol. 3 at 120-121 (Oct. 19, 2006).  Additionally, although Plaintiff testified that she feels that Hollywood discriminated against her, Plaintiff acknowledged during cross-examination that she had previously stated that Hollywood did not directly discriminate against her.  See Trial Transcript vol. 7 at 146-147.  Plaintiff further testified that Hollywood had never used a

16

Plaintiff presented no evidence linking Hollywood to Plaintiff's <u>termination</u>.  To the contrary, Hollywood testified that she had no input into Plaintiff's termination; in fact, Hollywood was no longer working in the 15th Services Squadron at the time of Plaintiff's termination.  See Trial Transcript vol. 3 at 123-125 (Oct. 19, 2006); see also Trial Transcript vol. 10 at 135-136 (Nov. 1, 2006) (Shojinaga testified that Hollywood was not involved in the decision to terminate Plaintiff).  Any evidence that Faria held a racial bias against Asian/Pacific Islanders was extremely weak, relying simply on his association with Hollywood and the fact that other managers under his command were not detailed for poor performance in distinguishable situations.  Plaintiff presented no evidence that Hodge or Hileman were motivated by discriminatory intent.  None of the witnesses, including Plaintiff herself, testified that they had ever heard Hodge, Faria or Hileman use a racial slur or comment on Plaintiff's race, color, or national origin.  See, e.g., Trial Transcript vol. 7 at 147-148 (Oct. 26, 2006).

In summary, the Court finds that the evidence presented at trial sufficiently supports the jury's finding that Plaintiff's race, color, and/or national origin was not a motivating factor in Defendant's decision to terminate

---

racial slur in Plaintiff's presence nor had Plaintiff heard Hollywood refer to her in a racially derogatory manner.  Id. at 147.

Plaintiff.[10/]  Considering all of the evidence and testimony, the Court is not left with any definite or firm conviction that a mistake has been committed as to Count 2.[11/]

### c.   Count 3

With respect to Count 3 (Plaintiff's claim of retaliation for alteration of Plaintiff's detail), the jury found that Plaintiff did <u>not</u> prove by a preponderance of the evidence that Defendant subjected Plaintiff to an adverse employment action by altering her detail to the Teen Center.  <u>See</u> Special Verdict Form at 6.  Substantial evidence supports this finding.

A notice of personnel action was submitted into evidence demonstrating that Plaintiff's detail to the Teen Center expired on May 9, 2004 - approximately 120 days after it began. <u>See</u> Trial Exhibit 414.  Plaintiff confirmed at trial that her detail to the Teen Center ended "exactly when it was supposed to"

---

[10/]The Court finds that Defendant had sound reasons for making its decision to terminate Plaintiff, but even if - as Plaintiff contends - the decision was unreasonable, the Court finds that the reasons were nonetheless not discriminatory.

[11/]Once the jury found that Plaintiff's race, color, and/or national origin was not a motivating factor in Defendant's decision to terminate her from employment, the jury was instructed not to answer the remainder of the questions on the Special Verdict Form relating to Count 2 because, without any discriminatory motivation, Defendant could not be held liable under that count.  <u>See</u> Special Verdict Form at 4.  Since the Court finds that the jury's finding in Count 2 that race was not a motivating factor is not against the clear weight of the evidence, the Court need not discuss the evidence in support of or against the remaining Special Verdict Form questions under Count 2, which were not answered by the jury.

end, in May 2004.  <u>See</u> Trial Transcript vol. 8 at 33 (Oct. 27, 2006) (Plaintiff answering in the affirmative).  This evidence supports the jury's finding that Defendant did not subject Plaintiff to an adverse employment action by altering her detail to the Teen Center.

Although Plaintiff introduced some slight evidence that her detail may have been altered - such as evidence that Hollywood indicated a preference to extend the detail beyond 120 days,[12] and that Julie Klembara shredded some of Plaintiff's files (perhaps signaling that Plaintiff would not be returning to ODR)[13] - the Court finds that, considering all of the evidence and testimony presented at trial, the Court is not left with any definite or firm conviction that a mistake has been committed as to Count 3.[14]

---

[12] <u>See, e.g.</u>, Trial Exhibit 359 at 8.

[13] <u>See, e.g.</u>, Trial Transcript vol. 2 at 106 (Oct. 18, 2006).

[14] Once the jury found that Defendant did not subject Plaintiff to an adverse employment action under Count 3, the jury was instructed not to answer the remainder of the questions on the Special Verdict Form relating to that count because, without any adverse employment action, Defendant could not be held liable under that count.  <u>See</u> Special Verdict Form at 6.  Since the Court finds that the jury's finding in Count 3 is not against the clear weight of the evidence, the Court need not discuss the evidence in support of or against the remaining Special Verdict Form questions under Count 3, which were not answered by the jury.

### d.   Count 4

With respect to Count 4, (Plaintiff's claim of retaliation for termination from employment), the jury found that Plaintiff did <u>not</u> prove by a preponderance of the evidence that her "protected activity was one of the reasons [D]efendant subjected [her] to termination from employment and that but for such activity, there would have been no termination from employment." <u>See</u> Special Verdict Form at 8.  Substantial evidence supports this finding.

As discussed with respect to Count 2, <u>supra</u> section III.B.1.b., Defendant introduced significant evidence that Plaintiff was terminated because she stopped showing up to work for over a year and had demonstrated no indication that she would be returning to work in the near future.  Defendant introduced specific evidence that Plaintiff's protected activity was not considered by anyone involved in the decision to terminate Plaintiff.  For example, Faria testified that he was not aware of the contents of Plaintiff's EEO complaints and that no such complaints formed any basis of his decision to propose that Plaintiff be terminated.  <u>See</u> Trial Transcript vol. 5 at 116. Ms. Shojinaga, the personnel officer who advised Hodge, Faria, and Hileman on personnel issues regarding Plaintiff's sick leave and eventual termination, testified that she was not initially aware (in April 2004 to March 2005) of Plaintiff's complaints and

20

that she never heard Faria or Hileman comment on any such complaints.  See Trial Transcript vol. 10 at 124-125, 135 (Nov. 1, 2006).

In summary, the Court finds that substantial evidence supports the jury's finding that Plaintiff did not prove that her protected activity was one of the reasons she was terminated and/or that the activity was the "but for" cause of her termination.  The Court finds that, considering all of the evidence and testimony presented at trial, the Court is not left with any definite or firm conviction that a mistake has been committed as to Count 4.[15]

## 2.   Adequate Deliberation

As discussed with respect to each of the four counts, Defendant introduced substantial evidence in its defense.  With such a strong case presented by the defense, the Court finds the relatively short length of jury deliberation (slightly longer than one hour) to be entirely reasonable.  See supra section

---

[15]Once the jury found that Plaintiff's protected activity was not one of the reasons for her termination (and/or that the activity was not the "but for" cause of her termination), the jury was instructed not to answer the remainder of the questions on the Special Verdict Form relating to that count because, without "but for" causation, Defendant could not be held liable under that count.  See Special Verdict Form at 8.  Since the Court finds that the jury's finding in Count 4 is not against the clear weight of the evidence, the Court need not discuss the evidence in support of or against the remaining Special Verdict Form questions under Count 4, which were not answered by the jury.

II.B.2.[16/]

The Special Verdict Form was thoroughly explained to the jury in open court before the jury commenced deliberations. The jury was required to answer only four of the eighteen questions on the Special Verdict Form, since for each count the jury found that Plaintiff did not meet her initial burden. The jury had ample time to deliberate on these four questions. The relatively short deliberation period in this case, by itself, does not indicate any misconduct or error on the part of the jury. The verdict is not against the clear weight of the evidence and the Court is not left with any conviction that a mistake has been committed.

## IV.  CONCLUSION

Having found no plain error on the face of the record, the Court denies Plaintiff's motion for judgment as a matter of law. Having found that the verdict is not against the clear weight of the evidence for any count and that the jury did not reach an erroneous result, the Court denies Plaintiff's motion for a new trial. The Court finds that no miscarriage of justice will result from the denial of Plaintiff's motions.

---

[16/]The Court notes that while this case involved allegations of race/color/national origin discrimination by Caucasians against a person of Asian/Pacific Islander descent, a jury comprised of one Caucasian and nine non-Caucasians rendered a verdict finding no such racial discrimination in approximately one hour.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 8, 2007.



_____
Alan C. Kay
Sr. United States District Judge